UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

In Re: ) BK No.: 13-40209
MARK W. MUEHLER and )
PATRICIA A. MUEHLER, ) Chapter: 11
)
) Honorable Timothy A. Barnes
)
)
Debtor(s) )

**FINAL ORDER APPROVING PAYMENT PROTOCOL FOR PAYMENT OF ORDINARY COURSE EXPENDITURES AND ADEQUATE PROTECTION FOR PAYMENTS TO SECURED LENDERS, STIPULATED AS TO OBJECTING CREDITOR STANDARD BANK & TRUST COMPANY**

This cause coming on to be heard on the Debtors' REQUEST FOR ENTRY OF ORDER ESTABLISHING PROTOCOL FOR PAYMENT OF ORDINARY COURSE EXPENDITURES AND ADEQUATE PROTECTION PAYMENTS (the "Motion," docket no. 9), and after notice and hearing, the Court finds that it has jurisdiction over the parties hereto and the subject matter of said Motion, that the Motion constitutes a core proceeding over which the Court has jurisdiction, and the parties consent to that jurisdiction, and that cause exists for granting the requested relief. In addition, the Court finds that all parties, with the exception of Standard Bank and the Office of United States Trustee, have defaulted, and accordingly as to each such defaulting party, entry of this Order is a Final and non-modifiable Order of Adequate Protection, but that this Order includes the resolution of the Objection (docket no. 32) to the Motion, filed on behalf of Standard Bank & Trust Company ("Standard"), which resolution is stipulated by and between Standard and the Debtors, Mark and Patricia Muehler (the "Debtors").

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1. The payments to be made by the Debtors in Exhibit A attached hereto are hereby approved by the Court, and acknowledged to be in the ordinary course of their business.

2. The Debtors are authorized to make such payments each month to each of the Secured Lenders as enumerated below, and each such payment, along with the maintenance of property insurance shall, subject to the additional terms as further set forth herein, be considered adequate protection of the interests of each such creditor in property of the Estate in the ordinary course of the Debtors' business.

    Standard Bank: $3,167.00
    PNC: $0.00
    JP Morgan Chase: $257.00
    CitiMortgage: $1,459.00
    Greentree Financial: $344.00
    Wells Fargo: $854.00
    Michael Steck: $656.25
    Bank of America/ Nationstar: $1,321.00
    Bank of America: $363.00 (Nissan Truck)
    Honda Finance: $548.00 (Honda CRV)

    3. No funds of the Estate shall be used to pay prepetition debts without permission of this Court.

    4. The Debtors and Standard have stipulated to the following provisions. Prior to filing the petition in this matter, the Debtors either directly as mortgages, or indirectly, as Collateral Assignments of Beneficial Interests, granted security interests in and to some or all of the parcels of real property set forth below (the "Real Property") to Standard to secure their obligations to Standard. The parties acknowledge that there is a question regarding whether a lien interest was granted with respect to two of the parcels (11149 McGovney and Willowcrest Lane, more fully described below) that has yet to be determined, and so the provisions of this Order as to adequate protection are without prejudice to the parties' rights to have any and all lien positions determined by this Court.

    5. The Debtors are using the Real Property in their operations post-petition. The Debtors submit that the sale of any of their properties is in the ordinary course of their business, but as and for additional adequate protection to Standard, agree that they will seek Court approval of any sales. As set forth herein, "Court approval" includes but is not limited to, confirmation of a plan of reorganization and/or entry of an order following notice and a hearing. Specifically as to the Real Property, the Debtors will use the Real Property during the course of this proceeding, as follows:

    a. 19632 Wolf Road, Mokena: This property consists of a two-story duplex, with a tenant on the 2nd floor who is paying rent to the Debtors. The first floor requires repairs, estimated to take about 3 weeks and cost $10,000-15,000 (plus or minus 20%). Once repairs are complete, this property will be listed and marketed for sale, with any sale subject to Court approval.

    b. 13044 Chicago Bloomington Trail, Homer Glen: This is the Debtors' residence, and they plan to continue using it as such during this case.

    c. 11149 McGovney, Homer Glen: This is a vacant lot, adjacent to the following property, for which the Debtors are developing a long-range plan that will be part of any reorganization plan proposed in this case. The Debtors do not plan to initiate any construction on this property prior to plan confirmation, and will not do so absent either (i) Standard's written consent or (ii) Court approval. This is one of two properties as to which the Debtors question whether Standard holds a lien. If either (i) the parties agree or (ii) the Court so finds, that Standard does not hold a lien on this property, then the use restrictions set forth herein shall be vacated, but the remaining adequate protection set forth herein shall remain in effect pending further Order of the Court, whether via plan confirmation or otherwise.

    d. 11145 McGovney, Homer Glen: This property consists of a house occupied by tenants who are paying rent to the Debtors, which other than replacement of a furnace, requires no known repairs or construction other than ordinary maintenance. The Debtors are evaluating this property and the above-referenced vacant adjacent lot for a long-range plan that will be part of any reorganization plan proposed in this case.

    e. Lots 2, 3, 4 and 5 Oak Meadow, Lockport: These are vacant lots presently listed for sale, with any sale subject to Court approval as required by the Bankruptcy Code. The Debtors do not plan to initiate any construction on these properties prior to plan confirmation other than perhaps clear some brush at a cost not to exceed $1,000.00, and will not do so (other than brush clearing) absent either (i) Standard's written consent or (ii) Court approval.

    f. 191st & Wolf, Mokena: This is vacant land constituting approximately 8 acres, most of which is

located in a flood plain, and as to which the Debtor claims Standard has a lien on only part. The Debtors plan to immediately invest $75,000 to $100,000 (plus or minus 20%) from funds on hand for engineering, zoning, etc. in order to address the flood plain and other preliminary issues, in order to turn this property into buildable lots. Once that is complete, the Debtors will then list and market the lots for sale, with any sale subject to Court approval as required by the Bankruptcy Code. The Debtors do not plan to go beyond "shovel ready," i.e., will not actually start building anything prior to plan confirmation, and will not do so absent either (i) Standard's written consent or (ii) Court approval.

     g. Willowcrest Lane, Mokena: This is vacant land that is presently being marketed for sale, with any sale subject to Court approval as required by the Bankruptcy Code. The Debtors do not plan to initiate any construction on these properties prior to plan confirmation other than perhaps clear some brush at a cost not to exceed $1,000.00, and will not do so (other than brush clearing) absent either (i) Standard's written consent or (ii) Court approval. This is one of two properties as to which the Debtors question whether Standard holds a lien. If either (i) the parties agree or (ii) the Court so finds, that Standard does not hold a lien on this property, then the use restrictions set forth herein shall be vacated, but the remaining adequate protection set forth herein shall remain in effect pending further Order of the Court, whether via plan confirmation or otherwise.

     h. 418 South Quincy, Hinsdale: This property consists of a house occupied by tenants who are paying rent to the Debtors. The house is considered a "tear down," and it is being marketed right now, as is, with any sale subject to Court approval as required by the Bankruptcy Code. The Debtors do not intend to do any construction on this property prior to plan confirmation (only regular maintenance for the tenants), and will not do anything other than necessary repairs absent either (i) Standard's written consent or (ii) Court approval.

     i. 125 South Adams, Hinsdale: same as property described in (h) above.

     j. 217 W. Third, Hinsdale: same as property described in (h) above.

     6.    Notwithstanding anything to the contrary, it is agreed that as to any occupied parcel of real estate, any reasonable expense necessary to ensure habitability of the premises is an authorized expenditure.

     7. The Debtors have presented Standard with evidence that as of the filing date, the value of the Real Property exceeds their obligation owed to Standard by more than $1.0 million.

     8. The parties stipulate and agree that as and for adequate protection of Standard's interest in the Real Property for the uses described herein, the Debtors shall make an interest payment to Standard in the amount of $3,167.00 per month, which is calculated using the rate of 5% on the outstanding principal as of the date of the filing of the petition. The first payment shall be due within three (3) business days following the Court's entry of this Stipulation, and shall include payments for the months of October and November, 2013 (i.e., $6,334.00). The payment for December, 2013, shall be due and payable either December 1, 2013 or within three (3) business days following the Court's entry of this Stipulation, whichever is later. Payments shall be made by directing same via check to Mr. Robert Gallagher, Standard Bank & Trust Company, 7800 West 95th Street, Hickory Hills, IL 60457, or at such other address as Standard shall advise the Debtors, in writing (which shall include e-mail).

     9. As and for additional adequate protection to Standard, the Debtors (i) shall maintain insurance on the Real Property consistent with the requirements of the U.S. Trustee's requirements and/or other

applicable guidelines and (ii) shall keep post-petition real property taxes current.

10. In the event that the facts set forth herein relating to property values, lien interests or otherwise prove to be erroneous and/or circumstances change, then either party may ask the Court to revisit the sufficiency and/or adequacy of the adequate protection set forth herein.

11. In the event that the Debtors' valuations of the Real Property prove to be erroneous and/or the valuations thereof drop below the amount owed to Standard as of the petition date, then Standard shall be entitled to an administrative claim to the extent that the value of the Real Property decreased after the petition date.

12. The Debtors will file their first proposed plan of reorganization no later than thirty (30) days after the bar date set in this matter for the filing of proofs of claim.

13. During the course of this case, the Debtors shall provide Standard with all information reasonably requested by Standard with respect to the Real Property, on a reasonably timely basis. Reasonably requested information shall include, but not be limited to, information about (i) the physical condition of any property and any repairs deemed necessary by the Debtors, (ii) the status of insurance, real estate taxes, utilities (if any), and/or rents (if any) on any property, (iii) the marketing plan, listing agreement, marketing materials and other information regarding efforts to sell any property, and (iv) the loan documents and amount owed with respect to any other lien that attaches to any property.

14. In addition, upon receipt of an offer for any one or more of the Real Properties, the Debtors shall transmit a copy of such offer via email or fax to Standard and its undersigned counsel within two (2) business days of receiving any such offer. The Debtors shall also permit Standard to inspect some or all of the Real Property as it may request, upon reasonable notice.

15. The Debtors and Standard acknowledge that prior to the filing of the petition, Standard setoff the sum of $19,347.95, which the Bank applied to the Debtors' obligations in accordance with the applicable loan documents. The Debtors and Standard agree that at present, Standard may retain said funds, without prejudice to (i) the Debtors' challenge to the receipt and/or application of said sum and (ii) Standard's defenses to any such challenge(s).

16. The Debtors and Standard agree that nothing contained herein shall limit or otherwise impair Standard's right to seek relief from the Bankruptcy Court under 11 U.S.C. § 362 should circumstances make that appropriate in Standard's sole and exclusive discretion.

17. The Debtors and Standard expressly preserve, and do not waive, their rights to contest the valuation of the Real Property for purposes of any plan of reorganization proposed by the Debtors or any other party, and nothing contained herein shall constitute an admission or other agreement regarding the value of the Real Property in relation to the amounts due to Standard.

IT IS SO ORDERED.

Enter:

Dated: 27 NOV 2013

United States Bankruptcy Judge

Rev: 20130104_bko

**Prepared by:**
Law Office of Deborah Kanner Ebner
11 East Adams Street
Suite 1401
Chicago IL 60603

Rev: 20130104_bko

# EXHIBIT A

## MARK & PAT MUEHLER BUDGET-2

| CATEGORY | AMOUNT | SOURCE | TOTAL |
|---|---|---|---|
| **INCOME** | | | |
| RENTS: | $ 1,500 | 418 S. Quincy, Hinsdale | |
| | $ 1,425 | 125 S. Adams, Hinsdale | |
| | $ 1,300 | 11145 McGovney, Mokena | |
| | $ 850 | 19632 Wolf, Mokena | |
| | $ 1,600 | 217 W. Third St., Hinsdale | |
| | $ 6,675 | | $ 6,675 |
| SOCIAL SECURITY: | $ 723 | Mark Muehler | |
| | $ 507 | Patricia Muehler | |
| | $ 1,230 | | $ 1,230 |
| | $ 367 | Link Card (SNAP) | $ 367 |
| Capitalization from | $ 20,933 | Fontana Property | $ 20,933 |
| SUBTOTAL | | | $ 29,205 |
| **EXPENSES** | | | |
| **Housing** | | | |
| Mortgage*  4.25% | $ 1,459 | CitiMortgage | |
| Maintenance | $ 200 | | |
| Property Taxes | $ 609 | Will County | |
| H/O & Auto Insurance | $ 121 | American Family Ins. | |
| Furniture & Appliances | $ 75 | | |
| Grass Cut & Snow Removal | $ 125 | | |
| | $ 2,589 | | $ 2,589 |
| **Personal** | | | |
| Clothing | $ 30 | | |
| Laundry/Dry Cleaning | $ 30 | | |
| Cosmetics | $ 30 | | |
| Haircuts | $ 50 | | |
| Other | $ - | | |
| | $ 140 | | $ 140 |
| **Entertainment** | | | |
| Restaurant Meals | $ 100 | | |
| Gifts | $ 10 | | |
| Magazine/Newspaper | $ 2 | | |
| Movies and Concerts | $ 5 | | |
| Vacations | $ 200 | | |
| Hobbies | $ 50 | | |
| | $ 317 | | $ 317 |

Exhibit A

| Health | | | | | |
|---|---|---|---|---|---|
| Doctor(s) | | $ 80 | Humana HMO | | |
| Dentist(s) | | $ 50 | Dr. R. H. Killian | | |
| Medications | | $ 40 | | | |
| | | $ 170 | | $ | 170 |
| **Transportation** | | | | | |
| Licensing | | $ 25 | Illinois Secretary of State | | |
| Maintenance | | $ 150 | | | |
| Gasoline | | $ 64 | | | |
| Parking Tools | | $ 3 | | | |
| | | $ 242 | | $ | 242 |
| **Food** | | $ 600 | | $ | 600 |
| **Utilities** | | | | | |
| Gas | | $ 32 | Nicor | | |
| Electricity | | $ 89 | ComEd | | |
| Garbage | | $ 38 | NuWay Disposal Serivce | | |
| Telephone | | $ 31 | Comcast | | |
| Cell Phone | | $ 61 | AT&T | | |
| Cable | | $ 31 | Comcast | | |
| | | $ 282 | | $ | 282 |
| **Installment Payments** | | | | | |
| Auto Loan-Nissan Truck | | $ 363 | Bank of America | | |
| Auto Loan-Honda CR-V | | $ 548 | Honda Financial Services | | |
| | | $ 911 | | $ | 911 |
| **Loans*** | | | | | |
| 1st Mortgages: | 5% | 1,321 | Nation Star | | |
| | 5% | 854 | Wells Fargo | | |
| | 5% | 344 | Green Tree | | |
| Adjustable | 3.125% | 257 | Chase | | |
| Interest only | 3.5% | 675 | Michael Steck | | |
| Adjustable | 4.564% | 145 | PNC Bank | | |
| | 5% | 3,167 | Standard Bank & Trust | | |
| | | $ 6,763 | | $ | 6,763 |
| Mortgage Credit | | | PNC Bank | $ | (145) |
| **R. E. BUSINESS EXPENSE** | | $ 17,336 | SEE EXHIBIT B | $ | 17,336 |
| EXPENSE SUBTOTAL | | | | $ | 29,205 |
| INCOME | | | | $ | 29,205 |
| GRAND TOTAL** | | | | $ | -- |

*Interest rates on loans at 5% or below are being paid at the rate for which they were contracted as listed above. Rates in access of 5% were reduced to 5%
**Plus or minus 10%

## EXHIBIT B REAL ESTATE BUSINESS EXPENSE
## Included are expenses for property development

| EXPENSE | MONTH | TOTAL |
|---|---|---|
| Grass Cutting | $ 55 | $ 650 |
| Permits/Fees | $ 39 | $ 230 |
| Repairs/Maintanence | $ 20 | $ 234 |
| Rubbish removal | $ 38 | $ 450 |
| Graphics | $ 16 | $ 190 |
| Loan expense | ? | |
| Advertising | $ 500 | $ 6,000 |
| Signs | $ 80 | $ 952 |
| Bank Service Fees | $ 26 | $ 311 |
| Donations | $ 6 | $ 66 |
| Dues/Publications | $ 250 | $ 3,000 |
| Education | $ 13 | $ 160 |
| **UTILITIES:** | | |
| Electric | $ 89 | $ 1,063 |
| Gas | $ 31 | $ 373 |
| Water | | |
| Internet | $ 93 | $ 1,113 |
| Telephone | $ 122 | $ 1,468 |
| Cell Phone | $ 61 | $ 730 |
| Website | $ 18 | $ 211 |
| **TRANSPORTATION** | | |
| Gas | $ 150 | $ 1,800 |
| Maintanence | $ 76 | $ 912 |
| Miscellaneous | $ 5 | $ 62 |
| **REAL ESTATE TAXES** | | |
| 11149 McGovney | $ 92 | $ 1,100 |
| Lot #5 Oak Meadow | $ 26 | $ 308 |
| Lot #4 Oak Meadow | $ 26 | $ 308 |
| Lot #3 Oak Meadow | $ 26 | $ 308 |
| Lot #2 Oak Meadow | $ 26 | $ 308 |
| Wolf & 191st St. | $ 13 | $ 154 |
| 191st St. & Wolf | $ 392 | $ 4,702 |
| Willowcrest Ln | $ 178 | $ 2,129 |
| Willowcrest Ln | $ 25 | $ 290 |
| Lot #3 Pine Hill | $ 16 | $ 184 |
| Lot #4 Pine Hill | $ 16 | $ 184 |
| Lot #5 Pine Hill | $ 16 | $ 184 |
| Lot #36 Pine Hill | $ 16 | $ 184 |
| Lot #17 Pine Hill | $ 16 | $ 184 |
| Lot #21 Pine Hill | $ 16 | $ 184 |
| 11031 Front St. | $ 28 | $ 326 |
| West Lake Estates | $ 17 | $ 196 |

| | | | | |
|---|---|---|---|---|
| **INSURANCE:** | | | | |
| E & O Insurance | $ | 150 | $ | 1,800 |
| Pine Hill Key Policy | $ | 10 | $ | 124 |
| Pine Hill Umbrella | $ | 31 | $ | 375 |
| **SALARIES** | | | | |
| Office Worker | $ | 1,500 | $ | 18,000 |
| Construction Laborer | $ | 1,500 | $ | 18,000 |
| Office Expense | $ | 35 | $ | 344 |
| Postage | $ | 10 | $ | 112 |
| Repairs/Maintanence | $ | 15 | $ | 184 |
| Supplies | $ | 51 | $ | 607 |
| **125 S. ADAMS** | | | | |
| Repairs/Maintanence | $ | 5 | $ | 52 |
| Real Estate Tax | $ | 603 | $ | 7,230 |
| Insurance | $ | 80 | $ | 958 |
| **217 W. THIRD** | | | | |
| Repairs/Maintanence | $ | 21 | $ | 249 |
| Real Estate Tax | $ | 747 | $ | 8,965 |
| Insurance | $ | 78 | $ | 937 |
| Water | $ | 13 | $ | 147 |
| Electric | $ | 22 | $ | 255 |
| Gas | $ | 21 | $ | 244 |
| **418 S. QUINCY** | | | | |
| Repairs/Maintanence | $ | 48 | $ | 567 |
| Real Estate Tax | $ | 473 | $ | 5,668 |
| Insurance | $ | 105 | $ | 1,253 |
| **11145 McGOVNEY** | | | | |
| Grass cutting | $ | 35 | $ | 420 |
| Repairs/Maintanence | $ | 50 | $ | 600 |
| Real Estate Tax | $ | 357 | $ | 4,276 |
| Insurance | $ | 100 | $ | 1,196 |
| **19632 WOLF** | | | | |
| Grass cutting | $ | 30 | $ | 360 |
| Capital Improvements | $ | 3,000 | $ | 30,000 |
| Real Estate Tax | $ | 330 | $ | 3,960 |
| Insurance | $ | 133 | $ | 1,588 |
| Electric | $ | 50 | $ | 150 |
| Gas | $ | 50 | $ | 150 |
| Water | $ | 50 | $ | 600 |
| **191st St. & Wolf Rd.** | $ | 5,000 | $ | 60,000 |
| | | | | |
| TOTAL* | $ | 17,336 | $ | 200,529 |

*Plus or minus 10%